IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE CINCINNATI INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 09 C 6359 |
| v. | ) ) ) | Magistrate Judge Martin C. Ashman |
| RALSTON BROWN, INC., and GREGORY R. BROWN, | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff The Cincinnati Insurance Company ("CIC") sued Defendants Ralston Brown, Inc. ("Ralston Brown") and Gregory Brown ("Mr. Brown") (collectively, "the Defendants") for money allegedly owed to CIC under various indemnity agreements between the parties. CIC is a corporation with its principal place of business in Ohio; Gregory Brown is a resident of Wisconsin; and Ralston Brown, Inc. was an Illinois corporation at the time this suit was filed. Relying on the Court's jurisdiction under the diversity statute, 42 U.S.C. § 1332, CIC brought claims of breach of contract, exoneration, and specific performance against the Defendants, and asked the Court to issue a preliminary injunction requiring the Defendants to post funds sufficient to cover their obligations to CIC.[1]

After the parties consented to have this Court conduct any and all proceedings in this case, including the entry of final judgment, CIC filed its motion for summary judgment.

---

[1] On June 1, 2010, Judge Charles R. Norgle granted CIC's request for preliminary injunction and ordered Defendants to post collateral in the amount of $314,820.

Unfortunately, Defendants' counsel withdrew from this case after the instant motion was filed, and CIC asked the Court to enter default judgment against Ralston Brown. The Court did so on April 14, 2011 because the corporation did not attempt to obtain counsel by March 16, as the Court had ordered it to do after advising the parties that a corporation cannot appear in federal court on a *pro se* basis. *Nocula v. UGS Corp.*, 520 F.3d 719, 725 (7th Cir. 2008). As the Court stated in its prior default judgment order, the motion for summary judgment is denied as moot insofar as it relates to Ralston Brown. For the reasons stated below, the Court finds that the motion is also denied as it relates to the individual Defendant, Gregory Brown, who appears *pro se*.

### I. Background

Before it was dissolved in December, 2009, Ralston Brown was an Illinois corporation that performed heating, ventilation and air-conditioning ("HVAC") services, as well as sheet metal fabrication under the name of Larson Sheet Metal. Gregory Brown was the company's sole shareholder. In October, 2008, Ralston Brown was the low bidder for replacing HVAC equipment on two projects undertaken by the State of Illinois Tollway – the Downers Grove Maintenance facility ("the M-14 project") and the Dekalb Maintenance facility ("the M-11 project"). Ralston Brown contracted to replace roof-top HVAC units on the M-14 project for a price of $189,744 and to replace unit heaters with infra-red heaters at the M-11 site for $269,099. Ralston Brown also entered a third contract in March, 2009 to replace unit heaters for a public construction project with the Schaumburg, Illinois Park District in the amount of $68,044 ("the Schaumburg project").

Each of the contracts Ralston Brown entered required the company to obtain payment and performance surety bonds in order to guarantee payment to the company's subcontractors and materialmen. Working through an insurance broker, Mr. Brown completed two contract bond applications with CIC on October 9, 2008 for the M-11 and M-14 projects. A similar contract bond application was filled out on March 23, 2009 for the Schaumburg project. The applications contained general indemnity agreements that required the signatures both of a principal acting on behalf of the corporation and of one or more individual indemnitors. The indemnity agreements provided that the principal and indemnitors would hold CIC harmless for all liabilities and disbursements made on behalf of Ralston Brown in relation to claims against the bonds the company was applying for. The agreements also obligated the principal and indemnitors to post collateral on demand by CIC if the insurance company received a payment claim on its performance or payment bonds.

Unfortunately, Ralston Brown was not able to carry out all of its contractual obligations to the Tollway or the Park District. The reasons for this are unclear from the current evidentiary record. Mr. Brown states that the company completed the M-14 project on time and that the work was accepted by the Illinois Tollway. Some portion of the amounts owed under Ralston Brown's contract, however, was not paid, and work on the M-11 project fell behind schedule. Mr. Brown also alleges that CIC interfered with his work on the Schaumburg project in ways that are not specified and prevented the Schaumburg Park District from paying Ralston Brown. For its own part, CIC states that it received claims in the amount of $291,974.32 against its payment bonds related to all three projects, as well claims on the performance bonds related to the M-11 and M-14 projects. (Plt's. Memo. at 1-3.) As a result, CIC now seeks, in relevant part,

to enforce its rights against Gregory Brown under the indemnity agreements he signed as part of the bond contract applications for the M-11, M-14 and Schaumburg projects.

## II. Legal Standard

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court views all facts in the light most favorable to Mr. Brown and draws all justifiable inferences in his favor. *Anderson*, 477 U.S. at 255. Not all factual disputes will preclude summary judgment; rather, a genuine issue of material fact will exist only where there is evidence such that a jury "could reasonably find for the [nonmoving party]." *Id.* The parties may not rely on mere allegations or speculation in arguing for or against summary judgment. *Argyropoulos v. City of Alton*, 539 F.3d 724, 737 (7th Cir. 2008). At the summary judgment stage, both sides must support their factual assertions with "competent evidence of a type otherwise admissible at trial." *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007). The burden of production is on the nonmovant to "set forth specific facts showing a genuine issue for trial" or else face an entry of summary judgment. Fed. R. Civ. P. 56(e)(2); *Warren v. Solo Cup Co.*, 516 F.3d 627, 629 (7th Cir. 2008).

While the Federal Rules of Civil Procedure provide the standard for summary judgment, this case involves a contractual dispute that comes within the Court's jurisdiction under the diversity statute. *See* 42 U.S.C. § 1332. Unless otherwise noted, therefore, the law of Illinois

applies to the substantive matters at issue here. *See Budinich v. Beckton Dickinson & Co.*, 486 U.S. 196, 198 (1988) ("[S]tate law generally supplies the rules of decision in federal diversity cases . . . ."); *Grochocinski v. Mayer Brown Rowe & Maw LLP*, 251 F.R.D. 316, 321 (N.D. Ill. 2008).

### III.  Discussion

The Illinois Public Construction Bond Act requires officials to obtain a payment bond from contractors who perform work for a political subdivision costing in excess of $5,000, or who undertake work for the State of Illinois costing more than $50,000. 30 ILCS 550/1. The purpose of the Act is to regulate claims against public bodies and to protect payment to contractors and materialmen, who do not have the right to place a mechanics' lien against a public body like the Illinois Tollway or the Schaumburg Park District. *Aluma Sys., Inc. v. Frederick Quinn Corp.*, 206 Ill.App.3d 828, 853-54, 564 N.E.2d 1280 (Ill.App.Ct. 1990). Although they are statutory, rather than common law obligations, payment and performance bonds are considered to be written contracts under Illinois law.[2] *Bd. of Educ. of Comm. High School Dist. No. 99 v. Hartford Accident and Indem. Co.*, 152 Ill.App.3d 745, 750, 504 N.E.2d 1000 (Ill.App.Ct. 1987).

Relying on Illinois law that indemnity agreements are to be construed like any other contract, CIC argues that this case is simple: Mr. Brown signed an indemnity agreement and is,

---

[2] In contrast to the indemnity agreements discussed below, the bonds do not contain a choice of law provision. (Complaint at Ex. A-C.) As the bonds themselves are not at issue here, the Court need not determine if they are governed by Illinois law. The Court does note, however, that although it is undisputed that CIC issued bonds on the M-11, M-14, and Schaumburg projects, the copies of the M-14 and Schaumburg payment and performance bonds that CIC has submitted are unsigned by Ralston Brown, Mr. Brown, or CIC.

without more, liable to CIC for payment under it.  (Plt's. Mot. at 3.)  Although admirably direct, this argument fails on several grounds.  As an initial matter, CIC's reliance on Illinois law is misplaced because the company overlooks that the agreement CIC relies on, and which was drafted by CIC itself, contains a choice of law provision stating that "[t]his agreement shall be governed by the laws of the State of Ohio."  (Complaint at Ex. D.)  Ordinarily, Illinois courts rely on § 187(2) of the Restatement (Second) of Conflict of Laws to enforce a contractual choice of law provision, unless the chosen state has no substantial relationship to the parties or the transaction, or applying the law of the chosen state would violate a fundamental policy under Illinois law.  *See Hall v. Sprint Spectrum L.P.*, 376 Ill.App.3d 822, 825-26, 876 N.E.2d 1036 (Ill.App.Ct. 2007).   As this Court is required to apply Illinois' choice of law rules, it assumes that Ohio law, not the law of Illinois, governs the terms of CIC's indemnity agreements.  *See Midwest Grain Prods. of Ill., Inc. v. Productization, Inc*., 228 F.3d 784, 787 (7th Cir. 2000).  CIC has not presented any argument on why Illinois courts would not honor the parties' choice of law provision and has not cited any Ohio authority supporting its rights under the agreement.  As a result, it has not shown why it is entitled to summary judgment as a matter of law on any of its claims.

      Furthermore, CIC's memorandum is at odds with the scope of its argument that Mr. Brown is liable for all payments CIC made on claims against the M-11, M-14, and Schaumburg bonds.  Presumably, CIC is seeking summary judgment on all the allegations contained in its complaint.  *See* Motion at 1 ("The Defendants are liable to CIC for all claims . . . incurred by CIC . . . under bonds issued on behalf of Ralston Brown").  The complaint makes clear that these claims include payments CIC made in relation to the Illinois Tollway project, as

well as two payments in the amount of $50,609.65 that the company made against the Schaumburg bonds. (Complaint at ¶ 20.) These include a payment of $45,476.01 to G.W. Berkheimer Co. and a $5,132.64 payment to Temperature Doctors Heating and Cooling, Inc. (*Id*.)

CIC's memorandum supporting its motion, however, makes no mention of the Schaumburg claims that are asserted against Mr. Brown in CIC's complaint. The evidentiary record CIC has submitted in support of its motion further muddles the picture. The company's Local Rule 56.1 Statement of Facts includes the $5,132.64 payment to Temperature Doctors that is stated in the complaint, but it does not list the $45,476.01 payment to G.W. Berkheimer. The company attached an affidavit of its bond claims manager, Michael Fox, to its summary judgment motion as *prima facie* evidence for the payment claims on which it is seeking summary judgment. That affidavit includes detailed explanations of claims CIC received, and payments it made, on the M-11 and M-14 bonds, but it fails to note any claims or payments related to the Schaumburg bonds, including the $5,132.64 matter stated in the Local Rule 56.1 Statement of Facts. (Plt's. Memo. at Ex. 1.) Further confusing the matter, CIC has filed an additional Local Rule 56.1 Statement of Facts in reply to concerns raised at oral argument about the execution of the March 23, 2009 indemnity agreement that covered the Schaumburg bonds. CIC's second Local Rule 56.1 fact filing, however, omits any reference to the $5,132.64 payment to Temperature Doctors that was asserted in the original fact filing.

The Court can only reasonably conclude that, insofar as CIC is even seeking summary judgment on the Schaumburg claims alleged in the company's complaint, it has provided no argument and no evidence supporting this issue. The Court notes in this regard that CIC's

motion premises Mr. Brown's duty to indemnify the company exclusively on the October 9, 2008 indemnity agreement that was executed as part of the application for the M-11 and M-14 bonds. Indeed, its reply states that Mr. Brown is liable for the Schaumburg payments because he "signed the [October 9, 2008] Indemnity Agreement attached to CIC's Complaint." (Reply at 3.) As CIC is aware, however, Mr. Brown presented another indemnity agreement to the Court dated March 23, 2009 that he argues was part of his application for the payment and performance bonds on the Schaumburg project. That agreement plainly shows that Mr. Brown never signed it in his capacity as an individual indemnitor.

CIC has not made any argument on why that 2009 agreement does not apply to Mr. Brown's alleged liability for payments on the Schaumburg bonds. If it does apply, CIC must show why Ohio law would find that Mr. Brown is bound by its terms in the absence of his signature to the contract; if it does not apply, CIC must show how Mr. Brown can be held liable under the October 9, 2008 indemnity agreement for bonds that were issued five months later in 2009 on a different project and by means of a separate application. CIC has presented no argument on either of these issues. Summary judgment, therefore, is denied on any claim CIC may have against Mr. Brown related to the Schaumburg project. *See Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1310 (7th Cir. 1989) ("When a party moves for summary judgment on ground A, his opponent is not required to respond to ground B – a ground the movant might have presented but did not.").

Turning to allegations concerning the M-11 and M-14 projects, CIC's argument that the October 9, 2008 indemnity agreement speaks for itself fails to respond to Mr. Brown's central point in his response: the October 9 agreement is not binding on him personally because it was

never fully executed.  CIC must demonstrate that the agreement is valid and that Mr. Brown is bound by its terms as a matter of law in order prevail on its motion.[3]  As Mr. Brown notes, however, the indemnity agreement that CIC relies on, and which it includes as Exhibit D to its complaint, is not fully executed.  The agreement contains signature lines for a principal, as well as for individual indemnitors.  It also provides that when a corporation like Ralston Brown is a party, "two corporate officers must sign below on behalf of the Company[, and] [s]hareholders of the Corporation and their spouses must sign personal indemnity below."  This requirement is stated in a box placed just above the signature lines and is highlighted in bold print as "IMPORTANT."

Exhibit D shows that Mr. Brown did not comply with these requirements, either in regard to Ralston Brown as the principal or to himself as the indemnitor.  Mr. Brown named Ralston Brown as the principal and signed "Gregory R. Brown, President" as the corporation's authorized agent.  However, no other corporate officer signed on behalf of Ralston Brown, as the agreement's execution terms required.  Mr. Brown also signed his name as a personal indemnitor on the 2008 agreement, but his wife did not do so – again in non-compliance with the

---

[3] CIC has submitted only one indemnity agreement dated October 9, 2008, but Mr. Brown states that he made two separate bond applications on that date.  According to Mr. Brown, each application contained a second page for an indemnity agreement, and he has submitted copies of two remarkably similar agreements.  It is entirely unclear from the record whether Mr. Brown executed one indemnity agreement that applied to both the M-11 and M-14 applications, or whether he executed two identical agreements on October 9.  As Mr. Brown does not dispute that his alleged liability on payments against the M-11 and M-14 bonds is governed by the single indemnity agreement contained in CIC's Exhibit D, he does not raise an issue of material fact on whether CIC can rely on Exhibit D to show liability on both sets of bonds.  In future proceedings in this matter, however, the parties shall clarify the facts surrounding the execution of the bond applications and indemnity agreement(s) that took place on October 9, 2008.

agreement's language.[4] In its reply brief, CIC does not respond to these issues, stating only in a conclusory manner that Mr. Brown is liable because he signed the indemnity agreement in his own name. (Reply at 3.)

The relevant question is not whether Mr. Brown signed his individual name to the October 9, 2008 indemnity agreement, but whether signatures to a contract that do not comply with the contract's own stipulations for execution form a binding agreement under Ohio law under the facts presented here. This may be the case in some circumstances. *See Am. States Ins. Co. v. Honeywell, Inc*., No. 56552, 1990 WL 19319, at *5 (Ohio.App. 8th Dist. March 1, 1990) ("The existence of a valid contract does not necessarily require the signature of all the parties to the contract."). That possibility, however, works against, rather than supports, a grant of summary judgment because Ohio law strongly suggests that additional factual material is required to determine the issue. *See Divine Const. Co., Inc. v. Ohio-American Water Co*., No. 91 AP-251, 1991 WL 151218, at *5 (Ohio.App. 10th Dist. July 30, 1991) (finding that summary judgment is inappropriate on a claim arising under an incompletely-executed contract and remanding for a finding of fact on the validity of the agreement). CIC has not addressed this issue, and the Court does not undertake legal arguments for a party or grant summary judgment on grounds that have not been raised. *See Am. Hardware Mfrs. Ass'n v. Reed Elsevier, Inc*., No. 03 C 9421, 2010 WL 3034419, at *3 (N.D. Ill. July 27, 2010). Accordingly, the Court cannot find as a matter of law that Ohio courts would conclude that Mr. Brown is bound by the indemnity agreement on which CIC relies, and summary judgment is denied.

---

[4] Mr. Brown has provided affidavit testimony stating that he has been married since 1978 and that he was Ralston Brown's sole shareholder.

## IV. Conclusion

For all these reasons, the Court finds that CIC has not carried its burden under Fed. R. Civ. P. 56, and its motion for summary judgment [Dckt. 46] is denied as it relates to Defendant Gregory R. Brown.

**ENTER ORDER:**

_____
**MARTIN C. ASHMAN**
**Dated:** June 1, 2011.                                   United States Magistrate Judge